UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:17-cv-00256-FDW

| SARIKO ANTONIO JONES, | ) |
| --- | --- |
| Plaintiff, | ) |
| vs. | ) ORDER |
| NORTH CAROLINA DEPARTMENT OF PUBLIC SAFETY, et al., | ) |
| Defendants. | ) |

**THIS MATTER** is before the Court upon Defendant's Motion for Summary Judgment, pursuant to Federal Rule of Civil Procedure 56. (Doc. No. 25).

## I.    BACKGROUND

On May 12, 2017, Plaintiff, a state inmate proceeding pro se, filed the instant civil rights action pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc et seq.,[1] claiming Defendants failed to accommodate his Muslim faith and discriminated against him based on his religion. (Compl., Doc. No. 1.) Plaintiff named as defendants the North Carolina Department of Public Safety ("NCDPS"), and Beauford Brown, Correctional Program Director I at Gaston Correctional Center ("GCC"). Plaintiff seeks damages and injunctive relief.

Plaintiff alleges that while he was at GCC, he was eligible to apply for work release employment outside the prison. He alleges Defendant Brown required Plaintiff to shave off his

---

[1] The Complaint cites the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb, et seq., but in light of the liberal construction requirement for pro se filings, see Haines v. Kerner, 404 U.S. 519, 520 (1972), the Court construes the Complaint as raising a claim under RLUIPA, which provides a cause of action for state prisoners.

1

beard before Brown would send Plaintiff to a work release job interview. Plaintiff objected, asserting that his Muslim faith required that he have a beard. (Compl. 3.) Plaintiff alleges further that he was offered a job by a work release employer but had to wait for a work-related document to come through. Defendant Brown, however, refused to send Plaintiff to the job after the document came through. According to Plaintiff, the employer called Brown to ask him to send Plaintiff, but Brown sent other inmates to the job site instead. (Compl. 3-4.)

On December 12, 2017, Defendants filed an Answer (Doc. No. 16), and the Court entered a pretrial order and case management plan governing discovery and dispositive motions practice (Doc. No. 17). Defendants filed the instant summary judgment Motion on July 31, 2018 (Doc. No. 25). In support, Defendants have filed an affidavit of Defendant Brown and documents from Plaintiff's prison case management file. (Brown Aff. with Ex. A, Doc. No. 26-1.)

On August 2, 2018, the Court entered an order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), notifying Plaintiff of his right to respond to Defendants' summary judgment Motion and the evidentiary obligations imposed under Federal Rule of Civil Procedure 56. (Doc. No. 28.) The Court provided Plaintiff 30 days to file a response.

The Roseboro Notice and Order was returned, the envelope unopened and marked "Released." (Doc. No. 29.) It was received and docketed in this Court on August 13, 2018. A review of NCDPS records shows Plaintiff was released from NCDPS custody on July 24, 2018.[2] Plaintiff has neither notified the Court of his release nor of his current address.

---

[2] See NCDPS Public Offender Information, https://webapps.doc.state.nc.us/opi/offendersearch.do?method=view.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted). Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. " 'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.' " Ricci v. DeStefano, 129 S. Ct. 2658, 2677 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

## III. DISCUSSION

**A. Standard of Review under the RLUIPA and the First Amendment**

As noted, Plaintiff alleges claims pursuant to both RLUIPA and the First Amendment. Beginning with Plaintiff's RLUIPA claim, RLUIPA provides, in part: "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person – (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."2 42 U.S.C. § 2000cc-1(a). "RLUIPA thus protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." Cutter v. Wilkinson, 544 U.S. 709, 721 (2005).

As for Plaintiff's First Amendment claim, the Free Exercise Clause of the First Amendment states that "Congress shall make no law respecting an establishment of religion." U.S. Const. amend. I. The Supreme Court has applied the First Amendment to the states through the Fourteenth Amendment. See Everson v. Bd. of Educ., 330 U.S. 1, 15 (1947). To state a free exercise claim under the First Amendment, a plaintiff must allege facts sufficient to show that he held a sincere religious belief, and that the official action or regulation substantially burdened his exercise of that belief. Hernandez v. Comm'r, 490 U.S. 680, 699 (1989). A prison policy that substantially burdens an inmate's ability to practice his religion withstands a First Amendment challenge when it is "reasonably related to legitimate penological interests." O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987) (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)).

**B. Claims for Injunctive Relief**

4

Plaintiff's claims for injunctive relief must be dismissed. "[A]s a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there." Rendelman v. Rouse, 569 F.3d 182, 186 (4th Cir. 2009) (citing Incumaa v. Ozmint, 507 F.3d 281, 286–87 (4th Cir. 2007); Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991) (transfer rendered moot a prisoner's claims for injunctive and declaratory relief, but not claims for damages); Taylor v. Rogers, 781 F.2d 1047, 1048 n.1 (4th Cir. 1986) (same)). Although an exception to the mootness doctrine exists for cases that are "capable of repetition, yet evading review," it applies only where: "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." Murphy v. Hunt, 455 U.S. 478, 482 (1982) (quoting Weinstein v. Bradford, 423 U.S. 147, 149 (1975) (per curiam )) (internal quotation marks omitted).

Plaintiff has been released from NCDPS custody, and he advances "no 'reasonable expectation' or a 'demonstrated probability'" that he will be subject again to the same acts alleged in his Complaint. See id. (quoting Weinstein, 423 U.S. at 149). Thus, Plaintiffs claims for injunctive relief are moot.

### C. Claims for Damages

#### 1. The RLUIPA

Plaintiff may not recover damages under RLUIPA. Congress has not authorized damages against state officials in either their official or individual capacities under RLUIPA. Sossamon v. Texas, 563 U.S. 277, 282 n. 1, 293 (2011); Rendelman, 569 F.3d at 189. "[D]amages are not recoverable on a RLUIPA claim because . . . a state's Eleventh Amendment immunity from suit

5

for damages is not waived in RLUIPA." Lovelace v. Lee, 472 F.3d 174, 193-94 (4th Cir. 2006). Accordingly, Plaintiff's claims for monetary damages under RLUIPA must be dismissed, as such relief is not available.

### 2. 42 U.S.C. § 1983

To the extent Plaintiff brings this action against Defendants in their official capacities for monetary damages, such claims are not cognizable under § 1983. Section 1983 authorizes a federal civil rights action against any "person" who acts under color of state law. 42 U.S.C. § 1983. "Persons" who may be sued for damages under § 1983 do not include a state or its entities, or state employees acting in their official capacities. See Will v. Mich. Dep't of State Police, 491 U.S. 58 (1989); see also Kentucky v. Graham, 473 U.S. 159 (1985) (holding that the Eleventh Amendment bars federal damages actions against a state and its entities). As an arm of the State of North Carolina, Defendant NCDPS is not a "person" who may be sued for damages under 42 U.S.C. § 1983.

Plaintiff's § 1983 claim against Defendant Brown in his official capacity is treated as a claim against the government entity of which he is an agent – in this case, NCDPS. See Graham, 473 U.S. at 166 ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the officer personally, for the real party in interest is the entity."). Thus, Defendant Brown is not a "person" subject to suit for damages in his official capacity under § 1983.

To the extent Plaintiff seeks monetary damages against Defendant Brown in his individual capacity, Brown contends Plaintiff's claim is meritless and that he is entitled to qualified immunity, regardless. The doctrine of "qualified immunity operates to protect law enforcement and other government officials from civil damages liability for alleged

constitutional violations stemming from their discretionary functions." Raub v. Campbell, 785 F.3d 876, 880-81 (4th Cir. 2015). The Court need not reach the issue of qualified immunity, as Plaintiff's First Amendment Free Exercise claim does not survive summary judgment.

Plaintiff does not sufficiently establish a violation of his Free Exercise rights. As a threshold matter, to survive summary judgment, Plaintiff must present sufficient evidence for a jury to conclude that: "(1) he holds a sincere religious belief; and (2) a prison practice or policy places a substantial burden on his ability to practice his religion." Carter v. Fleming, 879 F.3d 132, 139 (4th Cir. 2018) (citing Thomas v. Review Bd. of Ind. Emp't Sec. Div., 450 U.S. 707, 718 (1981)); see also Anderson, 477 U.S. at 249 (citing First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 288–289 (1968)). A "substantial burden" on a person's religious exercise is one that "put[s] substantial pressure on an adherent to modify his behavior and to violate h[is] beliefs[.]" Couch v. Jabe, 679 F.3d 197, 200 (4th Cir. 2012) (alterations and omission in original) (quoting Lovelace, 472 F.3d at 187). The inmate must demonstrate that the substantial burden was a product of a defendant's conscious or intentional interference with religious rights. See Lovelace, 472 F.3d at 194–95, 201–02 (holding that suits under both RLUIPA and the First Amendment require a showing of "conscious or intentional interference" with the plaintiff's rights).

The Court finds Plaintiff has presented sufficient evidence for a jury to conclude that he holds a sincere religious belief. Cf. Wall v. Wade, 741 F.3d 492, 499 (4th Cir. 2014) ("As a preliminary matter, 'prison officials may appropriately question whether a prisoner's religiosity, asserted as the basis for a requested accommodation, is authentic.'" (quoting Cutter v. Wilkinson, 544 U.S. 709, 725 n.3 (2005)).) With respect to the second requirement, Plaintiff does not allege that Brown acted pursuant to a NCDPS or facility policy regarding grooming.

7

Therefore, survival of Plaintiff's claim depends upon whether he has presented sufficient evidence for a jury to conclude that Brown, of his own accord, consciously or intentionally placed a substantial burden on Plaintiff's religious rights. See Anderson, 477 U.S. at 249; Lovelace, 472 F.3d at 194–95, 201–02.

In his Complaint, Plaintiff alleges Brown insisted that he shave his beard before he could go for a job interview, that he told Brown that his religion, Islam, forbade him to shave his beard off, and that Brown discriminated against him by telling him that he could only get an interview if he "looked presentable by [Brown's] standards." (Compl. 3.) In his affidavit, Defendant Brown denies requiring Plaintiff to shave off his beard or to alter it in any way. (Brown Aff. ¶ 5.) According to Brown, he only told Plaintiff he "would need to clean up before an interview, i.e. his personal appearance," and he did so because Plaintiff "would walk around with his clothes hanging off of him and a hat cocked to the side." (Brown Aff. ¶ 5.) Brown asserts that Plaintiff decided on his own to shave off his beard. (Brown Aff. ¶ 6.)

For the reasons noted previously, Plaintiff has not provided any evidence in response to Defendants' summary judgment Motion. When he filed his Complaint, however, Plaintiff also filed copies of two inmate grievances he submitted while at GCC (Doc. No. 4).

In the inmate Grievance dated January 21, 2017, Plaintiff states:

> I was ask by Mr. Brown to cut my beard in order to get an interview or an job[.] My beard is part of my religion "Islam[.]" [E]veryone knows how bad I want an job[.] I'd been lie to before[.] I can [sic] say anything be cause [sic] I need a job[.] Don't want to Afind [sic] him and not help me[.] This event happen 1-17-17[.] I have witness statements from Vinson Grary . . . and Arnold F. Booth Jr[.] I can get more if needed.

(Grievance No: 4515-2017-ADM-00014, Doc. No. 4 at 3.) Notably, this Grievance filed a few days after the conversation between Plaintiff and Brown alleges Plaintiff was asked by Brown to

8

cut his beard; he does not allege Brown insisted, demanded, or required that he shave his beard off. More importantly, however, the Grievance does not allege Brown knew Plaintiff was a Muslim, that Plaintiff told Brown he was Muslim, or even that Plaintiff told Brown it would violate his religion to shave his beard. The Grievance implies Plaintiff did not feel comfortable saying anything to Brown directly because he needed his help to get a job and did not want to "offend" him. According to a letter he wrote to this Court, Plaintiff "told [Brown's] boss and . . . was giv[en] a[ ] chance to interview with an employer," Beverly Knits, which offered him a job. (Pl's June 5, 2017 Let. 1, Doc. No. 6.) Plaintiff does not allege that Brown's boss also required that he shave or cut his beard before being allowed to interview for a job through work release.

According to NCDPS records, Plaintiff was offered the position at Beverly Knits on January 26, 2017. (NCDPS 2/10/2017 Case Mgt. Note 1, Def's Ex. A, Doc. No. 26-1 at 5.) Thus, nine days elapsed between Plaintiff's conversation with Brown and the job offer from Beverly Knits. Plaintiff does not reveal when during that time he shaved his beard, but notwithstanding what Brown may have told him or what Brown may have known about his religious beliefs, Brown's boss overrode any requirement that Plaintiff shave his beard to obtain an interview, according to Plaintiff himself. That Plaintiff may have shaved his beard before seeking assistance from Brown's boss does not save this claim, as Plaintiff neither alleges nor demonstrates he was forced to take those actions in that order.

There is insufficient evidence in the record for a jury to find that Brown required Plaintiff to shave off his beard knowing or intending that such a requirement would interfere with Plaintiff's religious rights. See Anderson, 477 U.S. at 249. There likewise is insufficient evidence in the record for a jury to find that a Brown's alleged directive placed a substantial burden on Plaintiff's ability to practice his religion. See id. As such, Plaintiff has failed to

9

demonstrate a genuine issue for trial exists with respect to whether Brown violated his First Amendment Free Exercise rights. See id.

Plaintiff makes other allegations against Brown, specifically that after he was offered the job at Beverly Knits, Plaintiff had to wait for a duplicate Social Security card to be issued by the Social Security Administration, that after he received the card, Beverly Knits called Brown asking that Plaintiff be sent out to the job, but Brown sent other inmates instead and would not send Plaintiff. (Compl. 3-4.) Plaintiff provides no corresponding dates for his allegations.[3]

For his part, Brown confirms Plaintiff was offered a job by Beverly Knits on January 26, 2017, and that Plaintiff was missing a work-related document – a Social Security card – that had to be obtained before he could be hired. (Brown Aff. ¶ 6.) Attached to Brown's affidavit is a copy of a February 9, 2017 email from Debbie Lawrence, a Beverly Knits employee, asking for some work release inmates to interview for a few open positions, including those originally offered to Plaintiff and another inmate. According to Lawrence, she could not "wait a few weeks for [Plaintiff and the other inmate] to get their Social Security Cards." (Feb. 9. 2017 Email, Def's Ex. A, Doc. No. 26-1 at 8.) According to Brown, Beverly Knits hired someone else who could start the job immediately and did not request Plaintiff after that. (Brown Aff. ¶ 7.)

Plaintiff fails to explain, and it is not obvious to the Court, how any of these facts are relevant to whether Brown intentionally violated Plaintiff's First Amendment Free Exercise

---

[3] These allegations appear to be related to the other Grievance Plaintiff filed with the instant Complaint. That Grievance, dated April 11, 2017, alleged that on "1-17-17," Brown violated the Religious Freedom Restoration Act by insisting that Plaintiff shave his beard before he would send him for an interview despite knowing Plaintiff was a Muslim. (Grievance No: 4865-2017-8BDM-00828, Doc. No. 4 at 1.) The Grievance also alleged that after being hired for a job, Plaintiff and another inmate were held up waiting for their Social Security cards, that the other inmate "started" but Plaintiff did not, and that others were still hired. (Id.) The Grievance provides no dates that correspond to the later set of allegations. Nor does the Grievance state the connection between the first and second set of allegations.

rights by insisting that he shave off his beard before being allowed to interview for a work release job. Brown is entitled to summary judgment on Plaintiff's § 1983 claim for damages.

## IV. CONCLUSION

Plaintiff's claims for injunctive relief under RUILPA and § 1983 are moot. Plaintiff may not recover damages against state officials under RLUIPA. Plaintiff may not recover damages in a § 1983 suit against a state entity or state officials acting in their official capacities. Therefore, Defendants are entitled to summary judgment on those claims.

With respect to Plaintiff's § 1983 claim for damages against Defendant Brown acting in his individual capacity, Plaintiff has failed to raise a genuine dispute of material fact as to whether Brown violated his rights under the First Amendment Free Exercise clause. Defendant Brown is entitled to summary judgment on that claim.

**IT IS, THEREFORE, ORDERED** that:

1. Defendants' Motion for Summary Judgment (Doc. No. 25) is **GRANTED**;
2. Plaintiff's Complaint (Doc. No. 1) is dismissed with prejudice; and
3. The Clerk of Court is respectfully requested to terminate this action.

Signed: October 23, 2018

Frank D. Whitney
Chief United States District Judge